**DICKSTEIN**SHAPIRO LLP

1633 Broadway | New York, NY 10019-6708
TEL (212) 277-6500 | FAX (212) 277-6501 | dicksteinshapiro.com

*(212) 277-6691 (Direct Dial)*
*(917) 591-0941 (Direct Fax)*
*MitchellJ@DicksteinShapiro.com*

May 20, 2014

Honorable Naomi Reice Buchwald
United States District Court
　　for the Southern District of New York
United States Courthouse
500 Pearl Street, Room 2270
New York, New York  10007

　　　　Re:　*FirstBank Puerto Rico v. Barclays Capital Inc., (In re Lehman Brothers Holdings Inc.) Case Nos. 13-cv-04732-NRB, 14-cv-01935*

Dear Judge Buchwald:

　　We represent Plaintiff-Appellant FirstBank Puerto Rico ("FirstBank") in the above-referenced appeal from the final judgment entered by the United States Bankruptcy Court for the Southern District of New York (Peck, J.) (the "Bankruptcy Court") granting the motion for summary judgment by Defendant-Appellee Barclays Capital Inc. ("Barclays"), holding FirstBank in contempt, and awarding Barclays contempt sanctions.  In accordance with Your Honor's Individual Practice Rule 2.E.1 governing motions, we are submitting this letter outlining the substantive arguments advanced in FirstBank's opening brief[1] (filed under seal on April 4, 2014, ECF No. 14, and delivered to Your Honor on April 7, 2014) ("FB Br.").

<u>Outline of FirstBank's Substantive Arguments</u>

　　FirstBank has brought this underlying action to recover its collateral (or its value), which it claims was mistakenly delivered to Barclays by Lehman Brothers Inc. ("LBI") as part of the $45 billion sale of assets that closed on September 22, 2008.  FirstBank had pledged this collateral to Lehman Brothers Special Financing Inc. ("LBSF") as security for Swaps obligations (the "FB Collateral") under a Credit Support Annex ("CSA") of an ISDA Master Agreement.  The asset sale to Barclays, which included Lehman's headquarters and LBI's North American trading and investment banking operations (the "Sale"), was effected in connection with the

---

[1] This letter does not discuss Barclays' arguments in its opposition brief; FirstBank will address those arguments in its reply brief, to be filed on June 6, 2014.

**DICKSTEIN**SHAPIRO LLP

Honorable Naomi Reice Buchwald
May 20, 2014
Page 2

bankruptcy filing of Lehman Brothers Holdings Inc. ("LBHI") (collectively, LBI and LBHI are "Lehman") on September 15, 2008 and LBI's SIPC liquidation filing on September 19, 2008. Only assets "used in connection with the Business," defined as the North American investment banking and capital markets businesses of LBI, were Purchased Assets under the LBI/Barclays Asset Purchase Agreement ("APA"). Derivatives contracts like the FirstBank ISDA and CSA, were Excluded Assets under this APA. The issue in the Bankruptcy Court was and on this appeal is whether this Collateral was nevertheless a "Purchased Asset" as that term was used in the Sale Order approved by the Bankruptcy Court on September 20, 2008. If it is not, Barclays has no legal basis to retain this property.

The hearing to approve the Sale transaction was convened a mere four days after LBHI filed for bankruptcy, and on the same day LBI filed for SIPC protection. At that time, the Bankruptcy Court was presented with the APA as the terms of the asset sale transaction, and those were the only terms of sale presented to the court for approval. However, as is clear from the Bankruptcy Court's decision granting Barclays' summary judgment motion (the "Decision"), the sole basis for any determination that the FB Collateral was a Purchased Asset was the subsequent Clarification Letter between LBI and Barclays, FB Br. at 15-16 and n.12, which did not even exist as of the Sale Hearing and which was never even presented for Bankruptcy Court approval.

In other proceedings in the LBI/LBHI bankruptcy and liquidation the Bankruptcy Court strongly criticized this Clarification Letter, stating that some of its provisions were either radically different from anything presented at the Sale Hearing or in actual conflict with the statements made at that hearing, and should have been subjected to further oversight and approval. FB Br. at 7. However, despite the court's "nagging questions" about the enforceability and binding effect of this "vital side letter" which made "major changes" to the structure of the acquisition and affected property rights, FB Br. at 10-11, the Bankruptcy Court treated the Clarification Letter as having been approved, by virtue of the conduct of the parties to that document demonstrating "unequivocal reliance" on it. FB Br. at 28. There was no such reliance by FirstBank, a complete stranger to the Clarification Letter, and the Bankruptcy Court erred in enforcing the Clarification Letter and the Sale Order so as to justify the transfer of the FB Collateral to Barclays thereunder.

First, such enforcement violates FirstBank's constitutional rights to due process. FB Br. at 24-28. The Sale Order only authorized the sale to Barclays of Purchased Assets as that term was defined on the date of the sale hearing (in the APA), and to the extent the definition was enlarged by the terms of the unapproved Clarification Letter, such enlargement is ineffective as it effects a taking of FirstBank's property without any notice whatsoever or an opportunity to be heard. FB Br. at 24. If the Bankruptcy Court itself "did not know everything about the transaction is should have known," *id.*, FirstBank certainly did not know its property would be

**DICKSTEIN**SHAPIRO<sub>LLP</sub>

Honorable Naomi Reice Buchwald
May 20, 2014
Page 3

taken in the Sale pursuant to an unapproved side letter. Substantial evidence established that FirstBank had no warning that its property would be transferred to Barclays, *id.* at 25-26, and that the parties to the Sale themselves did not believe that the FB Collateral had been swept up in the Sale as Purchased Assets. *Id.* at 13-14, 26.

      Second, the Bankruptcy Court's determination that the FB Collateral was a Purchased Asset under the Clarification Letter overlooked several disputed issues of material fact or improperly weighed the evidence on these issues and ignored several dispositive legal issues, all with respect to the inter-affiliate eve-of-bankruptcy repos by LBSF to LBI, engineered by LBI for both sides (the "Repos"), by which the FB Collateral ended up in LBI's possession. One such issue is LBI's power to convey this property free and clear of FirstBank's interests given that, among other things, LBI treated this collateral as a secured loan on its books and records; FirstBank knew nothing about these Repos and properly reflected its continued ownership of the FB Collateral on its own books and records, as Barclays' expert agreed was appropriate; and that the putative transfer to Barclays occurred *after* September 15, 2008, the date on which all rights to use the FB Collateral terminated. FB Br. At 8-9, 29-35. The Bankruptcy Court erred in granting summary judgment to Barclays on this record.

      Third, the Sale Order only enjoined claims against Barclays with respect to Purchased Assets and FirstBank's claim that the FB Collateral was not a Purchased Asset cannot be in contempt of the Sale Order. All of the operative documents on which Barclays and the Bankruptcy Court relied in connection with the Barclays summary judgment motion were submitted to the District Court on Barclays' prior motion to dismiss the FirstBank complaint, and U.S. District Judge Daniels concluded that he could not determine from the face of these documents whether FirstBank's claims were barred by the Sale Order. Thus, he denied the motion to dismiss and FirstBank went forward on its claims, as permitted by the District Court. Judge Daniels' denial of the Barclays motion to dismiss and the undisputed fact that the Sale Order requires reference to several layers of extrinsic documents for a definition of Purchased Assets establish both that FirstBank acted in good faith and that the Sale Order is not sufficiently specific, clear and unambiguous as to support the contempt award against FirstBank. FB Br. at 6, 19-22, 36-40.

      For all of these reasons and others cited in FirstBank's papers, the judgment of the Bankruptcy Court should be reversed and FirstBank's claims should be remanded for trial.

**DICKSTEIN**SHAPIRO<sub>LLP</sub>

Honorable Naomi Reice Buchwald
May 20, 2014
Page 4

<u>FirstBank's Statement Regarding Oral Argument</u>

In accordance with Your Honor's Individual Practice Rule 2. F. concerning oral argument on motions, FirstBank requests oral argument of this appeal.

                                              s/Jeffrey A. Mitchell
                                                Jeffrey A. Mitchell

JRC/mf

cc:    Boaz Morag, Esq. (via email)
         Attorney for Barclays Capital, Inc.

566169